[PHILADELPHIA, FEBRUARY 11th, 1837.]

## WALTER'S ESTATE.

### APPEAL.

1. A declaration made by a married woman in the Orphans' Court, under the 48th section of the act of the 29th of March, 1832, that she is willing that her share of the proceeds of real estate, sold under proceedings in partition, shall be paid to her husband without security, &c., is not binding on her, if made before the amount of such share has been duly ascertained and fixed.

2. If such declaration be duly made after the sum has been so ascertained, *it seems* that it cannot be retracted.

THIS was an appeal from a decree of the Orphans' Court for the

(Walters' Estate.)

County of Philadelphia, made in the matter of the estate of George A. Walters, deceased, under the following circumstances.

George A. Walters died intestate, on or about the 9th day of August, 1809, leaving issue four children, to wit: George A., Hannah, (intermarried with Amos Truman,) Mary, who intermarried with Charles Wood, deceased, and Elizabeth, who intermarried with　　　　　Shean, and who is deceased, leaving two children, to wit, John and Elizabeth Shean. On the 18th day of April, 1835, application was made to the Orphans' Court for the appointment of seven men to make partition of the real estate of the intestate, which was accordingly done.

On the 15th of May, 1835, the inquest returned that they had made partition of part of the real estate of the said George A. Walters, to and among his heirs and legal representatives, and that partition could not be made of another part of the same, which they appraised at the sum of $900; which proceedings were confirmed by the court: and, on the same day, the heirs and legal representatives of the intestate came into court, and by their attorney in fact, refused to take the part of the estate appraised by the inquest at the valuation thereof, and desired the court to decree a sale of the same, which was accordingly done.

On the 17th of July, 1835, Mary Wood, administatrix of the said George A. Walters, made report to the court that she had, pursuant to the said order, sold the premises to Thomas Taylor, for the sum of six hundred and fifty dollars, which sale, so made as aforesaid, she prayed the court to confirm; and the court accordingly confirmed said sale, and approved of Samuel Bayne and William Wood, as the sureties of the administratrix.

On the 25th of July, 1835, Hannah Truman, (one of the children of the intestate,) and Amos Truman, her husband, drew a written order on the administratrix, for the payment of her distributive share to W. B. Geyer; which order was as follows:

"We do hereby authorise and request Mrs. Mary Wood, administratrix of George A. Walters, deceased, to pay to Mr. William B. Geyer, the amount to which we, or either of us may be entitled, of the purchase-money arising from the sale of the house, No. 246, South Front street, belonging to the estate of the said George A. Walters."

(Signed)　　　　　"Amos Truman,
　　　　　　　　　　Hannah Truman."

(Dated) "Philadelphia, July 25th, 1835."

(Walters' Estate.)

On the 28th day of July, 1835, the said Hannah Truman came into the Orphans' Court, and there filed her declaration stating that "whereas she was entitled to two hundred and          dollars, proceeding from the partition and sale of the real estate of the said George A. Walters, deceased, she did certify and declare that she did consent and agree that the same be paid to her husband, without any condition or security whatever," which declaration was acknowledged before Jonathan Knight, one of the then Associate Judges of said Court.

On the 18th of August, 1835, a *fi. fa.* at the suit of William B. Geyer against Amos Truman, (on a judgment for $271 43, entered by confession in the District Court for the City and County of Philadelphia, of December Term, 1834,) was put into the hands of the sheriff; the distributive share referred to being still in the hands of the administratrix.

On the 12th of September, 1835, Mary Wood, the administratrix, presented a petition to the Orphans' Court, praying to be allowed to pay into court for distribution, the share to which said Hannah Truman, wife of said Amos, should be entitled, which, after deducing expenses, she set forth would amount to about $125. Whereupon the court ordered the said sum to be paid into the Moyamensing Bank, to the credit of the Orphans' Court, not to be withdrawn without the order of the court.

On the same day Hannah A. Truman presented her petition to the Orphans' Court, setting forth that she had made the declaration and acknowledgment under the act of the 29th of March, 1832, in which she desired that her share of the estate of George A. Walters, deceased, sold by order of the Court, should be paid over to her husband, Amos Truman, without the necessary security required by the said act: That since making said declaration and acknowledgment the money arising from said sale, had been paid to the administratrix who was about to pay it into court: That her husband was greatly involved, and had given an order which he induced the petitioner to sign, to pay the said money to William B. Geyer in satisfaction of an old judgment. If the said money were so paid, she would be wholly unprovided for, and prayed the court to appoint some suitable person as her trustee, to whom her share of the estate might be paid for her sole and separate use; and to order that said money be paid over for that purpose, to such as the court might appoint as trustee as aforesaid. Appended to which petition there was a written declaration signed by Amos Truman the husband of the said Hannah Ann, desiring the money might be so settled for her sole and separate use.

Whereupon the court ordered the said petition to be filed, and appointed Ezekiel J. Young, trustee of said Hannah Ann, and grant-

ed a rule on William B. Geyer, to show cause why the share of Hannah A. Truman should not be paid over to the said trustee, returnable on the third Friday in September, 1835.

On the 18th of December, 1835, the accounts of Mary Wood, administratrix of said George A. Walters, deceased, were filed, exhibiting a balance in the hands of the administratrix for distribution, arising from the proceeds or sale of said real estate, after deducting expenses, of $529 81¼.

On the 11th of June, 1836, the court made a decree, by which they dismissed the petition of the said Hannah Ann Truman, requesting her share of the estate to be paid to her trustee, for her sole and separate use.

From this decree the petitioner appealed to this court.

Mr. *Oakford*, for the appellant, contended:—That according to the rule in chancery, which was now adopted in reference to the property of married women, in the Orphans' Court, the amount of the share of the wife ought to be precisely ascertained before she can be called upon to give her consent that it shall be paid to her husband; and that she has a right to revoke that consent at any time before actual payment to her. He cited 3 *Bro. Ch. Cas.* 195. *Anstruther*, 93. 1 *Newland's Practice*, 383. 12 *Ves.* 174. *Report of the Commissioners appointed to revise the Code.*

Mr. *R. K. Scott*, and Mr. *Hood*, *contra*, argued that the amount in this case was sufficiently ascertained; that there was nothing unfair in the proceeding; and that there was no authority for the position that she could retract an agreement, entered into in the manner required by the act of 1832. They cited 17 *Johnson*, 548. 1 *Roper on Husband and Wife*, 269. *Clancey on Married Women*, 314, 331, 349.

The opinion of the Court was delivered by

Rogers, J.—In *Yohe* v. *Barnitz*, (1 *Binn.* 365,) it was for the first time decided, that the share of a wife, which is directed to be paid in money, after partition of the real estate of her intestate parent, does not remain in the nature of real estate, but is converted into personal estate, and is altogether in the power of the husband, who may dispose of it in any way he may think proper. Chief Justice Tilghman regrets that the courts of this state are not vested with the power exercised by the Court of Chancery in England, of insisting on some provision for the wife, when the husband applies to them for the purpose of getting possession of her personal property. And Justice Duncan, in *Stoolfoos* v. *Jenkins*, (8 *Serg. & Rawle*, 172,)

and the present Chief Justice, in *Ferrer v. The Commonwealth*, (8 *Serg. & Rawle*, 342,) express the same opinion, in even more decided terms, of the unjust operation of the law on the rights of married women. For remedy of the injustice which resulted from the want of the specific powers of a court of chancery, to prevent this change of the real estate of married women into personalty, so far as respects the real property of the wife, converted into money by a sale or appraisement, under an order of the Orphans' Court, it is now provided, that the money so raised shall not be paid over to the husband, until he gives security in the manner and for the intent, in the act prescribed; with this proviso, that if the wife, being of full age, on a separate examination, the husband not being present, shall declare before one of the judges of the same court, &c., that she does not require such moneys to be secured, and that she makes the declaration freely and voluntarily, without any threats or compulsion on the part of her husband, the *full contents and legal effects of such declaration* being first made known to her by the judge, and the said declaration or acknowledgment be certified by the same judge, and filed of record in the said Orphans' Court, then, and in such case, the husband shall not be required to secure the said moneys, in the manner directed in the preceding part of the section. The same section prescribes the form of the declaration of the wife and the certificate of the judge; and in both, the sum to which the wife is entitled, as her portion, must be inserted. In this case, the wife made the declaration and the judge gave the certificate, in the manner and form directed in the act, which was duly filed in the Orphans' Court. But it is now alleged, on the part of the wife, that at the time the declaration was made by her, the sum, a portion of which she was entitled to, was not ascertained; or if ascertained, she was not correctly informed of the amount; and for this reason, she objects to the payment of the money to the husband, without the security required by the act; and prays the court, that on failure to comply with the terms of the act, the same may be invested in trustees for her use. And as to the fact, we have no doubt. On the face of the declaration itself, the amount appears to be uncertain; and the sum inserted seems to have been intended to cover any less sum, to which, by abatement, it might be reduced, or which might afterwards be ascertained to be due, as her portion or share of the estate. And this further appears from the subsequent settlement of the account by the administratrix, by which it is found, that instead of $200, the sum mentioned in the certificate, she was entitled, after payment of the debts of the estate, to but $125, as her portion. The question, therefore, fairly arises, whether a declaration made by a wife, before her portion is fixed and ascertained, is binding upon the wife.

This provision is intended for the protection of the wife, by preventing the payment of the fund to the husband, against the wishes

(Walters' Estate.)

of the wife, to the prejudice, and sometimes ruin, of the wife and children, and of the true interests of the husband himself. The act should therefore receive such a construction, as will best protect the interest of the wife and children, which is the main object of this section. The legislature doubtless intended, that before she should be divested of her portion, even by her own consent, she should have precise information of the quantum of the estate to which she was entitled; and for this purpose, the Judge who takes her acknowledgment, is directed to make known to her, the *full contents, and legal effects of the declaration*; which cannot be done to any good and beneficial purpose, unless the amount of her share of the estate, which she is about to relinquish, for the benefit of her husband, is previously settled. It is essential, that she should be correctly informed on this point; as it may, and doubtless in many cases would have a material influence on her determination, to allow the money to be paid over to the husband; and a concealment in this particular, would render her liable to imposition, and undue practices by those whose interests it might be to procure from her a relinquishment of her rights. And this is further shown to have been the intention of the legislature, from the form of the declaration and certificate, in which the sum must be inserted; which pre-supposes that it had been before ascertained and fixed. And this construction derives additional force from analogy to the decisions in chancery; from which this section is taken; for in that court, when a married woman will consent to have part of her portion paid to the husband, the court cannot refuse it. Thus in *Dimmock* v. *Atkinson*, (3 *Bro. C. R.* 195,) although it was strongly opposed by the trustees in a marriage settlement, yet the wife persisting, after a long examination, in her consent, the Lord Chancellor, after taking until next morning to consider of it, made the order on the petition of the husband, to have part of his wife's portion, (which was in court,) paid to him. But although the court feel themselves bound, however reluctant they may be to make the order, when she consents, yet they never take her consent, until the amount of her portion is ascertained. *Sperling* v. *Rookfort*, (8 *Ves.* 164.) *Woollands* v. *Crowther*, (12 *Ves.* 178.) And in *Edmonds* v. *Townsends*, (1 *Anstr. R.* 93,) it was held, that the court cannot take the consent of the wife to the disposal of her fortune, unless the amount is ascertained. In this cause, a *feme covert* attended to give her consent to the portion of the *residuum* of an intestate's estate being paid into the hands of her husband; but as there were some outstanding debts, (although almost desperate,) and the exact sum which would come to her, not being in other respects ascertained by the master's report, on account of some demands on the estate, which if allowed, would in some respects diminish her share; the court said they could not take her consent, till the question was fixed. It was then proposed, that her consent might be taken for

(Walters' Estate.)

the whole, which her share would amount to, without any deductions; and it was argued, that such consent would cover any less sum, to which by abatement, it might be reduced. But by the Court, " That would be in effect, taking her consent now, to a sum to be ascertained at a future time; and thereby deprive her of the power of changing her mind in the interim, which we ought not to do." It is therefore not enough that the sum mentioned in the declaration is greater than her share; for still the objection remains, that the amount is not yet fixed, but remains to be ascertained in future. This construction not only gives the wife all the information as to the amount of the fund, but it has the further advantage, that it avoids precipitation and haste, in the disposition of it; as she cannot part with her inheritance, until the estate is settled. Hence the Judge, who took the place of a Chancellor, took the acknowledgment of the wife, but it was on the misapprehension of the facts; for if he had known, that the estate remained unsettled, it would have been his duty, to refuse to take her acknowledgment. The money is still under the control of the Court, and remains in the same situation, as if no declaration of consent had been made. The husband is unwilling to comply with the terms of the act; and it only remains for the Court to appoint a trustee, to secure the money for the separate use of the wife.

It must be remarked further, that when a wife has given her consent, in the manner pointed out by the act, she cannot afterwards retract; but until her consent is obtained in the manner directed, the Court cannot order the money to the husband, until the requisitions of the act are fully complied with.

The order of the Court dismissing the petition of Hannah Ann Truman is reversed; and the Court direct that the money be paid to a trustee, for the separate use of the said Hannah Ann Truman.

                       Judgment reversed.