## Gutshall *et al. versus* Goodyear.

Where, in a partition of real estate in the Orphans' Court, in the year 1847, the land was sold, and the purchase money was secured by recognizance to be paid to the several heirs, one of whom was a married woman, who executed and filed a declaration, in pursuance of the Act of March 29th, 1832, that she did not require her husband to give security upon payment to him of her share, and she afterwards died before the whole of her share became due and payable—*Held,*

(1) That the sale in partition absolutely converted her interest into personalty.

(2) That the effect of the above declaration by the wife was to vest absolutely in her husband the right, as a chose in action, to the wife's share, not only of such money as might become due and be paid to him

during her life, but to all that might become due, whether prior or subsequent to her death.

(3) That after the wife's death her heirs or personal representatives had no right to any portion of such funds secured by the recognizance, as against the individual claim of the surviving husband.

June 4th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Cumberland county*: Of May Term, 1884, No. 35.

Debt, by Jacob Goodyear against John Gutshall, David Deitch, and George Beltzhoover, stakeholders, and John A. Goodyear, George W. Goodyear, and Addison L. Goodyear, defendants.

The parties filed the following case stated, in the nature of a special verdict:

Jacob Leidigh died in Monroe township in the year 1847, leaving to survive him a widow, Sarah—afterward intermarried with —— Gross—and four children, viz: George W. Leidigh, Catherine Leidigh, intermarried with John Messinger, Samuel Leidigh, and Mary Ann Leidigh, intermarried with Jacob Goodyear. The said decedent died seised in fee of three tracts of land situated in said township, upon which a writ of partition was awarded by the Orphans' Court of Cumberland county, on the 23d of August, 1847. Under the proceedings in partition all three tracts of land were sold at public sale. On the 14th December, 1847, tract No. 1, containing 160 acres and 10 perches, was confirmed to James Clark, the purchaser, for the sum of $6,698.61, who gave a recognizance with security for the payment of the shares of the several heirs-at-law, and of the interest annually on the sum of $2,232.87 to Sarah Gross, widow, during her natural life, and at her death, inter alia, for the payment to Jacob Goodyear and Mary Ann, his wife, in her right, (the husband and wife as one), of the sum of $558.22, being the one fourth of the dower fund.

On the same day (the 14th December, 1847), tract No. 2, containing 42 acres and 63 perches, was confirmed to John Beltzhoover, the purchaser, for the sum of $1,918.31, and a recognizance was filed by him, with security, for the payment of the shares of the several heirs-at-law and of the interest annually on the sum of $639.47 to Sarah Gross, widow, during her natural life, and at her death, inter alia, to secure the payment to Jacob Goodyear and Mary Ann, his wife, in her right, of the sum of $159.85.

On the same day (the 14th December, 1847), tract No. 3, containing 2 acres and 81 perches, was confirmed to John Messinger and Jacob Goodyear, the purchasers, for the sum

[Gutshall v. Goodyear.]

of $112.50, and a recognizance was given by them, with
security, for the payment of the shares to the several heirs-at-
law and of the interest annually on the sum of $37.50 to
Sarah Gross, widow, during her natural life, and at her death
to pay the sum of $9.37 to Jacob Goodyear and Mary Ann,
his wife, in her right. Each of these recognizances provided
that no money should be paid to the husband, Jacob Goodyear,
unless he gave security, or his wife came into court and made
the declaration of her assent to such payment according to
law. The proceedings in partition, O. C. Docket, No. 12 pp.
88–91, are made part of this case stated.

The Act of March 29th, 1832, § 48, provides as follows:—
" When upon any proceedings in the Orphans' Court a sum
of money shall be awarded by the court for the share or por-
tion to which a married woman may be entitled, such money
shall not be paid to her husband until he shall have given
security to the satisfaction of the court, that the amount
thereof, or so much thereof as the court shall deem proper, be
paid after his death to his wife, or if she shall not survive him
to her heirs, as if the same were real estate; or if the husband
shall be unable or refuse to give security as aforesaid the same
may be vested in trustees to be approved by the court, for the
same purposes, but reserving to the husband the interest
thereof during his life, unless the husband shall desire the
same to be settled for the separate use of his wife : *Provided
always*, that if the wife, being of full age, on a separate ex-
amination, the husband not being present, shall declare before
one of the judges of the same court, or if not resident in the
county, before a judge of a court of record in the county
or place where she may reside, that she does not require
such moneys to be so secured, and that she makes this
declaration freely and voluntarily without any threats or
compulsion on the part of her husband, the full contents and
legal effects (effect) of such declaration being first made
known to her by the judge, and the said declaration and
acknowledgment be certified by the same judge and filed of
record in the said Orphans' Court, then and in such case the
husband shall not be required to secure the said moneys in
manner aforesaid. The form of such declaration shall be as
follows," etc.

On the 1st of April, 1848, Mary Ann Goodyear, the wife,
appeared before the President Judge of the Orphans' Court
of Cumberland county, and declared in writing and acknowl-
edged separate and apart from her husband, that she con-
sented and agreed that the sums secured to be paid to her
husband and herself by the said recognizances (to wit, the
sum of $1671, the sum of $478, and the sum of $28, being the

[Gutshall v. Goodyear.]

amounts payable to her out of the three purparts of her father's estate, both before and after the death of the widow), be paid to her husband, Jacob Goodyear, without any condition or security whatever. This declaration was filed in the Orphans' Court the same day.

Upon the authority of this declaration and certificate all of the three sums arising from the three purparts of said land, payable to Jacob Goodyear and Mary Ann, his wife, before the death of Sarah Gross, the widow, were paid to said Jacob Goodyear as the payments fell due, according to the terms of the recognizances.

On the 6th October, 1867, Mary Ann Goodyear died, leaving to survive her her husband, Jacob Goodyear, and three children, John A. Goodyear, George W. Goodyear, and Addison L. Goodyear. Sarah Gross, the widow, died on the 28th August, 1883.

Letters of administration were issued on the estate of Mary Goodyear, to her husband, Jacob Goodyear.

Letters of administration were issued on the estate of Sarah Gross, to her son, George W. Leidigh.

The land bound by the first two recognizances above mentioned has passed, by divers conveyances, into the possession of John Gutshall and David Deitch, who own purpart No. 1, and George Beltzhoover, who owns purpart No. 2, who have paid out three fourths of the dower fund secured by said recognizances to three of the children of Jacob Leidigh, deceased, to wit: to George W Leidigh, Samuel Leidigh and Catherine Messinger, whose husband died before the widow. The said purchasers and owners of the land embraced in purparts Nos. 1 and 2 are ready and willing to pay the remaining fourth of said dower fund whenever it is determined who is legally entitled thereto. The amount secured by recognizance on purpart No. 3, is not claimed in this action.

Under these recognizances the land owned by John Gutshall was bound for $1400, all of which has been paid but $350; the land owned by David Deitch was bound for $832.83, all of which has been paid but $208.20; and the land owned by George Beltzhoover was bound for $639.43, all of which has been paid but $159.85. The fourth share, which is secured by the said recognizances, to wit: $350 due by John Gutshall, $208.20 due by David Deitch, and $159.85 due by George Beltzhoover, to be paid to Jacob Goodyear and Mary Ann, his wife, in her right, is claimed by said Jacob Goodyear, in his own right, under the provisions of the recognizances, the declaration and certificate and the law. Also, by Jacob Goodyear, as the administrator of Mary Ann Goodyear, deceased; and also by John A. Goodyear, George W.

[Gutshall v. Goodyear.]

Goodyear, and Addison L. Goodyear, the children of the said Jacob Goodyear and Mary Ann Goodyear, deceased.

If, therefore, the court shall be of the opinion that the said fund is payable to Jacob Goodyear, in his own right, then judgment to be entered for him; if the court shall be of the opinion that the said fund is payable to Jacob Goodyear, administrator of Mary Ann Goodyear, deceased, then judgment to be entered for said administrator; if the court shall be of the opinion that the said fund is payable to John A. Goodyear, George W. Goodyear and Addison L. Goodyear, then judgment to be entered for them; and if the court shall be of the opinion that the said fund should be divided between said parties, then judgment to be entered for each of said parties for the amounts to which each may be entitled; the judgment or judgments to be entered against John Gutshall, David Deitch, and George Beltzhoover, as stakeholders for the several amounts which each is liable to pay. The costs to be paid out of the fund, and either party to have the right to sue out a writ of error.

The court (HERMAN, P. J.,) filed the following opinion and judgment:

The title of Mrs. Goodyear to the land sold under the proceedings in partition was entirely divested by that sale. Her estate in the land was thereby converted into personalty, and but for the Act of the 29th March, 1832, her husband would have been entitled to it. Such was the law relative to the wife's share of land converted into money under proceedings in partition, prior to 1832; her husband was entitled to all the money payable before and after her death, inclusive of her share of the dower fund payable on the death of the intestate's widow, who survived the wife. Spangler's Appeal, 12 Harris 424.

The conversion of Mrs. Goodyear's property took place in 1847, and therefore the proceeds, as was said in Nissley v. Heisey, 28 P. F. S. 423, came under the Act of the 29th March, 1832, which forbade the payment thereof to the husband without a written consent and separate examination and acknowledgment of the wife, and without which the money would not have vested in him. But on the 1st of April, 1848, she appeared before the President Judge of the Orphans' Court, and, in manner and form as prescribed by the 48th section of the Act of 1832, declared in writing and acknowledged that she consented and agreed that the money should be paid to her husband, Jacob Goodyear, without any condition or security whatever; which declaration and acknowledgment were on the same day duly certified and filed of record in the Orphans' Court. All the requisites of the

law entitling him to the money "without any condition or security whatever" were thus fully complied with before the passage of the Act of the 11th April, 1848, and consequently when this Act took effect, the right to the whole of the money had already vested in the husband.

In pursuance of the right thus acquired, all the money payable before the death of Sarah Gross, widow of Jacob Leidigh, was paid to Jacob Goodyear before the death of his wife. She died October 6th, 1867, and Sarah Gross on the 28th August, 1883, when the dower fund fell due, according to the terms of the recognizances.

The part payable to Jacob Goodyear and wife having vested in Jacob Goodyear before the passage of the Act of 1848, is still his, and he is entitled to receive it the same as if his wife were still living—and he takes it not in right of his wife as her administrator, but in his own right and as his own. The Act of 1848 was not intended to affect the vested rights of the husband, acquired before its passage. Boose's Appeal, 6 Harris 393; Peck *v.* Ward, Id. 509; Stehman *v.* Huber, 9 Id. 262; Burson's Appeal, 10 Id. 164; Bachman *v.* Chrisman, 11 Id. 162; Mann's Appeal, 14 Wright 375; see also Bank *v.* Stauffer, 10 Barr 398; Lefever *v.* Witmer, Id. 505. Nor did the death of the wife divest the right of the husband to the fund; she could not even in her lifetime, after giving her consent in the manner pointed out by the Act of 1832, afterwards retract: Walter's Estate, 2 Wharton 251.

The case of Hitner *v.* Ege, 11 Harris 305, has no application to the facts of this case. There the subject of the controversy was real estate; here it is personal property we have to deal with.

The funds in controversy, amounting to $718.05, consist of the moneys payable to Jacob Goodyear and Mary Ann, his wife, at the death of the widow of Jacob Leidigh, as secured by the two recognizances given to secure the proceeds of the sale of purparts No. 1 and No. 2, of which, as set forth in the case stated, John Gutshall is to pay $350.00, David Deitch $208.20, and George Beltzhoover $159.85, to the person entitled thereto. Being of the opinion that the fund is payable to Jacob Goodyear, who is entitled to receive it in his own right, judgment is given for him.

And now, March 8th, 1884, judgment is rendered in favor of Jacob Goodyear against John Gutshall, David Deitch and George Beltzhoover, stakeholders, for the sum of $718.05, the judgment to be marked satisfied as to John Gutshall upon his paying the sum of $350.00 thereof, and to be marked satisfied as to David Deitch upon his paying $208.20 thereof, and to be

[Gutshall v. Goodyear.]

marked satisfied as to George Beltzhoover upon his paying $159.85 thereof. The costs to be paid first out of the fund.

The several defendants took this writ of error, assigning for error the judgment for the plaintiff, Jacob Goodyear.

*S. Hepburn, Jr.* (*S. Leidich* with him), for the plaintiffs in error.—It has never been decided that the effect of a wife's consent that her husband may receive her share of the proceeds of realty, under the Act of March 29th, 1832, is to *give* that money to the husband. In fact, the real meaning of § 48 of the Act of 1832 has never been declared by this court. We contend that the wife's agreement simply waives the security, but does not vest the property in the husband. Her declaration is nothing more than a waiver of security; it does not transfer the property to her husband or alter its character: Beyer *v.* Reesor, 5 W. & S. 504; Walter's Estate, 2 Wh. 250.

The purpose of the Act was to make the property descend as realty. The consent that the husband might receive it without giving security is perfectly consistent with his liability to account for it to his children, and as it is mere power to receive, it is inconsistent with the purpose of the Act to say that the power could not be revoked for good cause, before execution of it; or that the death of the wife does not revoke it; because the only reason for her consent—the mutual benefit—is then taken away. Spangler's Appeal, 12 Norris 424, does not affect this case; for the land there referred to was sold in 1828. The Act of 1832 was passed avowedly to correct the injustice of the law as it then stood. Nissley *v.* Heisey, 28 Sm. 418, does not decide that the wife's declaration under the Act of 1832, *vested* the property in the husband. It simply says that, as there was no such declaration, the property could not possibly have vested.

Whether such a declaration *vests* the property in the husband is to be decided, for the first time, in the case at bar. But whether or not it vest property actually received by him during the lifetime of the wife, it does not, we contend, affect money not paid to him, or not falling due until after her death. The purpose of the Act was to preserve the property of the wife, and to protect it against the husband.

The Act is broad enough to cover all property which comes to the wife from the real estate of her relatives. It forbids the husband to receive any such money without giving security; but it does not contemplate the possibility of his receiving it except during the lifetime of his wife. The security to be given is for the payment *after his death* to his wife, or "if she shall not survive him, to *her heirs,* as if the same were real estate." There is nothing in the proviso which gives to

11 OUTERBRIDGE.—9

her declaration the effect of an authority to receive money falling due after her death, and unless it is the necessary import of the words, we are confident, from the uniform tendency of this court to protect the separate estate of married women, that their meaning will not be enlarged in favor of the husband.

We admit that the Act of 1848 did not affect any *vested* rights of the husband. We deny, however, that the declaration under the Act of 1832 *vested* in the husband the right to the proceeds of realty belonging to the wife, which did not fall due, and come into the hands of the husband during her lifetime, because—

(1) The declaration cannot affect any property (or payment) not contemplated and provided for by the Act of Assembly; and the Act, by its own terms, clearly covers only such payments as fall due during the life of the wife.

(2) The husband's right being strictly legal—inequitable—must depend on the strict construction of the law. A strict construction, and, indeed, a plain reading of the terms of the statute, make the declaration nothing more than a *waiver of security during his life.*

(3) If there be any room for construction, the court will construe in favor of natural justice and of equity, which, in this case, are against the husband and in favor of his wife's children.

*F. E. Beltzhoover* (*J. E. Barnitz* with him), for the defendant in error.—The 48th section of the Act of 1832 is founded upon the analogy of the English Chancery practice which will not suffer the husband to take the wife's portion of funds under control of the court until he has agreed to make a reasonable provision for her and her children, unless the Chancellor is satisfied that it is with her free consent that it is paid over to him: 1 Dan. Ch. Pr. 92. The concluding proviso in the Act clearly gives the wife the right to waive, in a formal manner, the protection given in the preceding part of the section. In so waiving it she declares and acknowledges that it is her will that the fund be paid to her husband " without any condition or security whatever." Every requirement of the Act was complied with in the formal waiver by the wife in this case; hence the husband was entitled, unconditionally, to the whole of the wife's interest in the fund, whether payable *in presenti* or *in futuro*, during the wife's lifetime or after her death : Walter's Estate, 2 Wh. 250 ; Beyer *v.* Reesor, 5 W. & S. 504 ; Nissley *v.* Heisey, 28 P. F. S. 418.

Mr. Justice GORDON delivered the opinion of the court, October 6, 1884.

The learned judge of the court below held, that the title of Mrs. Goodyear to the land sold under the proceedings in partition, was entirely divested by that sale, and that the estate which up to that period she had in the land, was, by virtue of those proceedings, converted into personalty; that except for the statute of March 29th, 1882, her husband would have had the right to have taken it absolutely, and that this right would, in such case, extend not only to the money payable before her death, but also to that payable after that event, as well as to her share of the dower fund due after the death of the intestate's widow, who survived Mrs. Goodyear.  In support of this ruling there was a citation of Spangler's Appeal, 12 Har. 424. That there is here a correct statement of the husband's rights prior to the passage of the Act above cited, is not open to doubt. And though eminent judges may have made some strong statements as to what they would or would not do in order to defeat this right of the husband, yet has the rule never been denied, nor an attempt made to defeat it.  What the husband was entitled to, was not merely the money as it became due, from time to time, from the proceedings in partition, but to the securities which were taken for the price of the land. They as well as the money that might happen to be paid down, were the personalty into which the land was converted, and these he might dispose of by assignment or otherwise as he saw fit.  Hence, whether these choses in action, by whatever name they might be called, became due and payable before or after the wife's death, could make no difference, since, by force of law, they became the absolute property of the husband, and his right thereto was fixed at the time of the conversion; in other words, at the consummation of the partition.  Then came the Act of 1832, as above cited, which, whilst it made no difference on the doctrine of conversion as previously held, abolished the husband's unqualified right to claim the proceeds of the partition as his own.  It gave to her the control over, and ultimate right in, her separate property, to the extent at least of the corpus of the partition fund, and provided that it should vest in her as though it were realty. There was thus a partial anticipation of the Act of 1848.  But this Act went no farther than as above stated, and it was not intended to absolutely lock up her estate so that she could not use it as she might judge proper.  On the contrary, it was held in the cases of Hinney v. Phillips, 14 Wr. 382, and Martha Mann's Appeal, Id. 375, that a married woman, as well before as since the Act of 1848, might dispose of her separate estate by a gift of it to her husband.  No one, I suppose, would con-

tend that even under the Act of 1832, Mrs. Goodyear might not have given to her husband the money arising from the partition as fast as she received it.  But the legislature wisely provided that as to that species of the wife's personal property, acquired as in said Act stated, the husband should not as theretofore, assume the ownership of it as of course, but only with her assent.  That about such assent there might be no doubt; that she might be protected from the fraud or. coercion of her husband, and that when she did conclude to give to him property secured to her own use, the gift might be free and open, the Act provided how and in what manner her assent should be given, and her acknowledgment thereto taken.  But it is contended that even after this solemn form has been complied with the wife does not really part with her property in the fund, but thereby only waives the security otherwise required by the statute; in other words, he must still hold the fund as trustee for his wife.  This reading of the proviso is entirely too narrow; for it must not be forgotten that the Act is speaking in view of the well known previous right of the husband over his wife's personal property, and the intention is now to curtail and restrain that right.  He may still have the money, provided he will give " security to the satisfaction of the court that the amount thereof, or *so much thereof as the court may deem proper*, be paid after his death to his wife, or if she shall not survive him, to her heirs."  And in case of his refusal or inability to secure the same, it may be vested in trustees.

Then comes the proviso, which, upon the properly acknowledged and certified declaration of the wife, setting forth " that she does not require such moneys to be secured," provides that " then and in that case the husband shall not be required to secure the said moneys in manner aforesaid; " in other words, he takes the moneys just as he did before the Act.  And this is obvious enough, for if he takes the money by virtue of his wife's declaration, and without security, how can the court interfere to say how much of it shall be held in trust for the wife and her heirs ?  The intervention of the court is thus altogether excluded.  The design of the Act, as we have before intimated, is not to destroy the husband's right altogether, but so to control and limit it that the court may compel him to make a proper provision for his wife out of her own estate, and certainly with this power to compel him to give security, the entire control of the court over the matter falls, and the husband is left to take as he did before the passage of the Act.  That this is a correct interpretation of the statute is further demonstrated by the fact that the declaration prescribed by the Act, requires, *inter alia*, that the married woman shall

[Gutshall *v.* Goodyear.]

certify that she consents and agrees that the moneys arising from the partition shall be paid to her husband "without any condition or security whatever." In this manner the statute interprets itself in providing for an unconditional payment of the money to the husband, thus vesting in him an unqualified property in all the payments of the partition fund due, or to become due; and so absolute is this disposition of this property, that it was held, in Walter's Estate, 2 Wh. 246, that when the wife had thus given her consent to the receipt of the fund by her husband, she could not afterwards retract it.

The learned counsel for the plaintiffs in error seem to think that in Beyer *v.* Reesor, 5 W. & S. 510, they have a case which supports their contention. We are of a different opinion. It was there held that the declaration and separate examination of a married woman, required by the Act of 1832, in order to entitle the husband to the wife's share of her deceased father's estate secured by recognizance in the Orphans' Court, must be filed during the lifetime of the wife, otherwise at her death it will go to her heirs at law. Both husband and wife were dead, and suit was brought by the administrator for the recovery of said share for the purpose of distribution among the husband's next of kin to the exclusion of the wife's heirs. The claim thus made was defeated solely on the ground above stated, and it seems to be admitted throughout the discussion of the case, that had the declaration been properly filed, the money would have belonged to the husband. "Nothing," says the learned judge, who delivered the opinion in the court below, which was approved by this court, "can divest it from this course of distribution," that is, distribution on the wife's death, to her heirs, "but the consent of the wife given under the guards carefully provided by the Act." Under the qualification here introduced by the word "but," we are certainly warranted in saying that had the statute been strictly complied with, as in the case in hand, the result would have been different; the money would have gone to the next of kin of the husband, and the case would thus have exactly covered the present contention.

The judgment is affirmed.